**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0337n.06
Filed: June 13, 2008

**No. 07-3922**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| A TO Z, INC.; XTREME DVD, INC., dba Video Superstore, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| CITY OF CLEVELAND; CITY OF PARMA, | ) ) | |
| Defendants-Appellees. | ) ) | |

Before: GILMAN and COOK, Circuit Judges; and COHN,[*] District Judge.

PER CURIAM. Two adult businesses, A to Z, Inc., and Xtreme DVD, Inc. (collectively, "Xtreme"), appeal the district court's grant of summary judgment to the cities of Cleveland and Parma on res-judicata and statute-of-limitations grounds, as well as the denial of their own motion for summary judgment challenging Cleveland's adult-business zoning ordinance as unconstitutional. Because the two-year statute of limitations applicable to Xtreme's lawsuit has indeed expired, we affirm.

I.

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

Xtreme operates a general video rental store near Cleveland's border with Parma, a southwestern suburb. This dispute began in February 2002, when Xtreme applied for a permit to convert its existing video rental store into an adult video store, bookstore, and video arcade.

The next month, Cleveland denied the permit application on two grounds: Xtreme's proposal featured a trio of adult entertainment uses, when Cleveland's ordinances allowed only one adult entertainment use per lot; and it encroached—just barely—on the ordinances' 1,000-foot buffer from residential districts.

In July 2002, Cleveland and Parma entered into a use-reciprocity agreement requiring each city to "consider the lots and uses across [the] common border" for "all instances where [a city's zoning code] requires a separation of lots or uses." The recitals explained that the Parma side of the border was "zoned primarily for commercial and residential uses," while the Cleveland side was "zoned primarily for industrial uses"; therefore, the agreement stated, "[i]t is desirable for the municipalities to consider uses across their common border because of the inconsistencies of zoned uses across that border."

Meanwhile, Xtreme subdivided its lot to set the store beyond 1,000 feet from the nearby Cleveland residential district and scaled back its business plan to a single adult video store. Believing that it now merited a permit, Xtreme re-applied in June 2003. But by then, the use-reciprocity agreement between Cleveland and Parma had been in effect for nearly a year. Because Xtreme was again within 1,000 feet of a residential district—this time in Parma—Cleveland

denied the permit application. Since the permit denial, Parma reduced its buffer zone to 200 feet in February 2005, but Cleveland has maintained its 1,000-foot restriction.

Xtreme brought unsuccessful appeals in the Board of Zoning Appeals, the Cuyahoga County Court of Common Pleas, and the Eighth District Court of Appeals. After Xtreme's adverse Ohio appellate judgment, it filed a complaint in the Northern District of Ohio on September 8, 2005, alleging that Cleveland Codified Ordinance § 347.07, the ordinance creating the 1,000-foot buffer from residential areas, violates the First, Fifth, and Fourteenth Amendments of the United States Constitution, as well as Article 1 of the Ohio Constitution. The complaint sought to invalidate the use-reciprocity agreement because of its failure to comply with Ohio procedural laws, to recoup the compliance expenses that Xtreme incurred after the first permit denial, and to enjoin any further enforcement against an adult use on Xtreme's lot.

Cleveland and Parma responded with a battery of defenses, and the district court agreed with two of them: expiration of the statute of limitations and res judicata.

II.

On review of a grant of summary judgment, "[this court] appl[ies] a de novo standard of review, view[s] the evidence in the light most favorable to the non-moving party, and will affirm a grant of summary judgment if the record evidence does not establish a genuine issue of material fact." *Jones v. Reynolds*, 438 F.3d 685, 689 (6th Cir. 2006) (internal citations omitted); *see also* Fed.

No. 07-3922
*A to Z, Inc. v. City of Cleveland*

R. Civ. P. 56(c).

We review de novo a district court's application of a statute of limitations. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). This court analogizes § 1983 claims to state-law personal injury claims and employs the limitations period from the forum state's law. *Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir. 1989). The parties agree that Ohio's two-year statute of limitations for personal injury claims governs, *see* Ohio Rev. Code Ann. § 2305.10(A), but they dispute when the claim accrued.

Federal law, rather than Ohio law, determines claim accrual. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citing *Wallace v. Kato*, 127 S. Ct. 1091, 1095 (2007)). "Under federal law, the limitations period begins to run when a plaintiff knew or should have known of the injury that forms the basis of the claim." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). Put another way, "we have looked to what event should have alerted the typical lay person to protect his or her rights." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000) (internal quotation marks omitted).

Cleveland and Parma argue that Xtreme's claim accrued when the Board of Zoning Appeals issued its final order denying the second permit application on June 20, 2003. At that point, Xtreme knew that Cleveland would not allow it to open an adult business at its desired location and that only a judicial remedy could change that result. Therefore, the cities say two years expired on June 20, 2005—approximately three months before Xtreme brought this action.

Xtreme tries to sidestep the statute of limitations by pointing to a distance-restriction change by the City of Parma that occurred after the second permit denial. On February 7, 2005, Parma reduced its 1,000-foot residential buffer zone to 200 feet. According to Xtreme, this change—not the permit denial—alerted it to constitutional violations. Xtreme posits that this change destroyed the equipoise between Cleveland and Parma that existed while each maintained identical distance restrictions and marked the start of Cleveland's "enforcing its zoning laws outside of its municipal limits."

We agree with Cleveland and the district court that Parma's changed distance regulation is irrelevant to Xtreme's claims because only a change in use regulations could bear on this action. As the district court observed, Xtreme's argument is "an inartful attempt to bootstrap this later date onto earlier events in an attempt to avoid dismissal for untimeliness." Further supporting the district court's judgment, Xtreme's complaint never mentions or refers in any manner to Parma's distance amendment, undermining its alleged importance to the accrual of Xtreme's constitutional claims.

We thus agree with the judgment of the district court in granting Cleveland's motion for summary judgment based on the untimeliness of Xtreme's complaint, and accordingly find it unnecessary to examine res judicata as an alternative basis for affirming.

AFFIRMED.